UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL HOME LOAN
MORTGAGE CORPORATION,

       Plaintiff/Counter-Defendant,

v.

GAIL HASSELL

       Defendant/Counter-Plaintiff/Third-Party
       Plaintiff

v.

WELLS FARGO BANK, N.A. d/b/a
WELLS FARGO HOME MORTGAGE, INC.

       Third-Party Defendant.
_____/

Case No. 11-14564
Hon. Lawrence P. Zatkoff

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on  March 6, 2013 2012.

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Third-Party Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss [dkt 10] and Plaintiff/Counter-Defendant Federal Home Loan Mortgage Corporation's ("Freddie Mac") Motion for Judgment on the Pleadings [dkt 17].  The parties have fully briefed the Motions.  The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motions be resolved on

the briefs submitted, without oral argument. For the following reasons, Wells Fargo's Motion to Dismiss and Freddie Mac's Motion for Judgment are GRANTED.

## II. BACKGROUND

### A. FACTUAL BACKGROUND

This case involves real property located at 8285 Twilight Drive, Brighton, MI 48116 (the "Property"). On or about July 24, 2003, Defendant Gail Hassell received a mortgage loan from Third-Party Defendant Wells Fargo in the original principal amount of $167,400.00 (the "Loan"). At closing, Hassell signed a Note (the "Note") and, to secure the repayment of the Loan, granted a mortgage on the Property (the "Mortgage"). The Mortgage was recorded in Livingston County. According to the Mortgage, if Hassell failed to make the required payments under the Note, the holder of the Mortgage could commence foreclosure proceedings against the Property.

*1. Hassell's Loan Modification*

Hassell failed to make the required payments and thereby defaulted on the Loan. Wells Fargo agreed to offer Hassell a Home Affordable Modification Program ("HAMP") Trial Period agreement ("Trial Plan"), and Hassell signed the Trial Plan on August 24, 2009. The Trial Plan required Hassell to make three trial plan payments on October 1, November 1, and December 1, 2009. In the midst of the Trial Plan, Hassell lost her job in September 2009.

*2. Hassell Executes a Partial Reinstatement/Repayment Plan*

After the completion of the Trial Plan, on August 3, 2010, Wells Fargo offered, and Hassell agreed to, a Stipulated Partial Reinstatement/Repayment Agreement ("Partial Reinstatement Agreement"). Under the Partial Reinstatement Agreement, Hassell acknowledged that she had defaulted "in certain monthly payments from 08-01-09 through the date of this letter . . . ." *Id*. The Partial Reinstatement Plan also states:

>this agreement does not constitute a waiver of our rights or remedies contained in the Note and/or Mortgage; and acceptance of any payments made by you will not be deemed to affect the acceleration of the Note and/or Mortgage in the event of default under the terms of this agreement and the remainder of the accelerated loan balance shall remain due and owing.

By signing the agreement, Hassell also confirmed that she had read the Partial Reinstatement Plan and understood that she was aware of her right to consult with legal counsel. Hassell defaulted on the Partial Reinstatement Plan.

*3. Wells Fargo Foreclosed on the Property.*

Wells Fargo began foreclosure proceedings under the Mortgage and Michigan law. Wells Fargo published a notice of foreclosure in the Livingston County Press & Argus Newspapers for four consecutive weeks on July 23, July 30, August 6, and August 13, 2010. Wells Fargo also posted a notice of foreclosure on the Property on August 2, 2010. The sale was originally scheduled to be held on August 25, 2010. Because the sale was adjourned to February 23, 2011, weekly Notices of Adjournment of Mortgage Foreclosure Sale were posted "before or at the time of sale and at the place of sale" beginning on August 25, 2010, until the sale occurred on February 23, 2011.

On February 23, 2011, Freddie Mac purchased the Property at the sheriff's sale. The Sheriff's Deed was recorded with the Livingston County Register of Deeds on March 3, 2011. Hassell failed to redeem within the six month redemption period, which expired on August 23, 2011.

**B. PROCEDURAL BACKGROUND**

On September 6, 2011, Freddie Mac filed an eviction action against Hassell in the 53rd District Court. Hassell filed counterclaims, which exceeded the jurisdiction of the 53rd District Court, and on September 15, 2011, the case was transferred to the 44th Circuit Court, Livingston County. Hassell's Counterclaims against Freddie Mac are as follows: Count I – Invalid Foreclosure under Mich. Comp. Laws § 600.3208; Count II – Fraudulent Misrepresentation; Count III – Quite Title; and Count IV –

Violation of the Michigan Consumer Protection Act. Hassell's Third-Party Complaint seeks to invalidate the foreclosure sale, and requests a modification under HAMP and money damages.

On October 17, 2011, Freddie Mac removed the case from the 44th Circuit Court to this Court based upon its authority under 12 U.S.C. § 1452(f). On February 29, 2012, this Court held a scheduling conference during which it advised that Hassell could add new parties if needed.

On April 26, 2012, Hassell filed a Third-Party Complaint against Wells Fargo alleging the following Counts: Count I – Breach of Contract; Count II – Breach of the Implied Warranty of Good Faith and Fair Dealing; Count III – Promissory Estoppel; Count IV – Breach of Stipulated Partial Reinstatement/Repayment Agreement; Count V – Intentional Infliction of Emotional Distress ("IIED"); Count VI – Fraudulent and Intentional Misrepresentation and Negligent Misrepresentation; Count VII – Invalid Foreclosure by Publication; and Count VIII – Quiet Title.

As this Opinion and Order regards Defendant/Counter-Plaintiff/Third-Party Plaintiff Hassell's Counter-Claims and Third-Party Complaint, the Court shall refer to her as "Plaintiff"; the Court shall collectively refer to Plaintiff Counter-Defendant Freddie Mac and Third-Party Defendant Wells Fargo as "Defendants."

### III. LEGAL STANDARD

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a party's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that party's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp.*

4

*v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the party pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *Id.* at 556. *See also Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000).

## IV. ANALYSIS

### A. STANDING

As an initial matter, Defendants argue that Plaintiff lacks standing to assert any right to the property because, once the redemption period expired, Plaintiff's rights and title to the property were extinguished. Defendants' assertion is based on the Michigan Court of Appeals' decision in *Overton v. MERS*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009). According to Defendants, the court in *Overton* rejected the purported standing of former property owners who allowed the redemption period to expire.

In response, Plaintiff argues that courts are in disagreement over whether a plaintiff challenging a mortgage foreclosure loses standing to sue upon expiration of the redemption period. According to Plaintiff, the Michigan Court of Appeals' decision in *Overton* is not a "standing" decision and is an improper basis for Defendants' claim that Plaintiff lacks standing. The Court disagrees.

Michigan courts have long held that a plaintiff is barred from challenging a foreclosure sale after the right to redemption has passed. *See Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942) (finding that "plaintiffs did not avail themselves of their right to redemption in the foreclosure proceedings and at the expiration of such right . . . all plaintiffs' rights in and title to the property were extinguished.") Several Michigan state and federal courts, discussed below, have applied *Piotrowski* to

5

bar claims by former property owners on their foreclosed properties after the period of redemption has passed. Even if an action challenging a foreclosure is filed *before* the expiration of the redemption period —which is not the case here—this does not toll the running of the redemption period and does not change this result. *Overton*, 2009 WL 1507342.

In *Overton*, the plaintiff challenged the foreclosure and sale of his property at public auction on April 18, 2007. *Id.* at *1. The redemption period expired on October 18, 2007, and plaintiff filed suit on September 21, 2007. *Id.* The Michigan Court of Appeals rejected plaintiff's argument that his filing suit tolled the redemption period:

> Plaintiff's suit did not toll the redemption period. Plaintiff is simply trying to wage a collateral attack on the foreclosure of the property. Even if his assertions were true and the cases he cites indeed supported his arguments, plaintiff was required to raise the arguments when foreclosure proceedings began. Plaintiff made no attempt to stay or otherwise challenge the foreclosure and redemption sale. Although he filed his suit before the redemption period expired, that was insufficient to toll the redemption period. 'The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity.' *Schulthies v. Barron,* 16 Mich. App. 246, 247–48, 167 N.W.2d 784 (1969). Once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished. *Piotrowski v. State Land Office Bd.,* 302 Mich. 179, 187, 4 N.W.2d 514 (1942).

2009 WL 1507342, at *1.

The Michigan Court of Appeals reached a similar conclusion in two subsequent cases. *See Awad v. Gen. Motors Acceptance Corp.,* No. 302692, 2012 WL 1415166, at *4 (Mich. Ct. App. April 24, 2012) (relying on *Overton* to conclude that after expiration of redemption period, plaintiff "lost all right, title, and interest in the property and, therefore, lost her standing to sue"); *Mission of Love v. Evangelist Hutchinson Ministries,* No. 266219, 2007 WL 1094424, at *5 (Mich. Ct. App. April 12, 2007) (finding that plaintiffs "no longer had any right or interest" in a foreclosed property, and therefore no "standing" under Michigan law, after the expiration of the redemption period). Additionally, multiple federal cases in this District have followed *Overton* to deny challenges to foreclosures following expiration of the

6

redemption period regardless of the date of filing of plaintiff's complaint. *See Dixon v. Wells Fargo Bank, N.A.*, 12-10174, 2012 WL 4450502 (E.D. Mich. Sept. 25, 2012) (collecting cases that cite *Overton* and read it as a "standing" case).

The Court acknowledges that other cases in this District have elicited varying interpretations of *Overton*, and the Sixth Circuit has questioned whether use of the term "standing" is correct when the term is used in the context of barring a plaintiff's claim to property post-redemption. *See El-Seblani v. IndyMac Mortg. Services*, 12-1046, 2013 WL 69226 (6th Cir. Jan. 7, 2013). Irrespective of this, the Court finds that the issue of whether *Overton* is a "merits"-based or "standing"-based decision, is not dispositive in this case. Under either reading, Plaintiff's claims must fail because Plaintiff failed to challenge the foreclosure before the redemption period expired, failed to redeem the property, and failed to salvage any claim by not showing fraud or irregularity.

The foreclosure sale occurred on February 23, 2011, and Plaintiff's right to redeem the property therefore expired on August 23, 2011. *See* Mich. Comp. Laws § 600.3204(8). Yet, Plaintiff neither contested the propriety of the foreclosure proceedings nor claimed that Wells Fargo had breached its obligations until after Freddie Mac brought its eviction action. Plaintiff then asserted counterclaims, asking the Court to unwind the foreclosure sale after the redemption period had expired. Moreover, it was not until April 26, 2012, that Plaintiff filed her Third-Party Complaint against Wells Fargo. Even if Plaintiff's assertions are true and the cases she cites indeed supported her arguments, she was required to raise the arguments when foreclosure proceedings began. *Overton*, 2009 WL 1507342, at *1. *See also Richard v. Schneiderman & Sherman, PC,* 818 N.W.2d 334, 337 (Mich. Ct. App. 2011), *rev'd on other grounds,* 807 N.W.2d 325 (Mich. 2012) (finding that an action challenging foreclosure must be brought "promptly and without delay" because the foreclosure statutes are intended to create finality and certainty in property rights.) Plaintiff instead made no attempt to stay or otherwise challenge the foreclosure and

sale. As such, when the redemption period expired on August 23, 2011, Freddie Mac became vested with all right, title and interest in the Property—thereby precluding Plaintiff's claims.

### 2. *Fraud or Irregularity*

The only possible exception to the rule that such claims are barred post-redemption applies when the mortgagor makes a strong showing of "fraud or irregularity." *Tatar v. Trott & Trott, P. C.*, No. 10–12832, 2011 WL 3706510, at *8 (E.D. Mich. Aug. 3, 2011). Yet, the standard for granting an extension for fraud or irregularity is a stringent one and a foreclosure will only be set aside if 'very good reasons' exist for doing so." *Kubicki v. Mortgage Electronic Registration Sys.*, 807 N.W. 2d 433, 434 (Mich. Ct. App. 2011) (internal quotations omitted). "[I]t would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *Sweet Air Inv., Inc. v. Kenney*, 739 N.W. 2d 656, 659 (Mich. Ct. App. 2007) (internal quotations omitted). In particular, there must be a clear showing of fraud or irregularity as to the foreclosure proceeding itself, and not simply as to any conduct by a defendant. *See Pine Oaks, LLC v. Devries*, No. 249163, 2004 WL 2827396, at *5 (Mich. Ct. App. Dec. 9, 2004) (finding "significant procedural irregularities with respect to the default, foreclosure and redemption" where home was sold for $100,000 less than its alleged value and where there were questions as to whether the foreclosure was undertaken against the proper party); *Freeman v. Wozniak,* 617 N.W.2d 46, 49 (Mich. Ct. App. 2000) (finding no equitable grounds for relief where a plaintiff, due to mental inability, never received notice of a foreclosure whose "procedure was technically proper").

As noted, all right, title and interest in the property vested in Freddie Mac on August 23, 2011—the date the redemption period lapsed. The only possible argument available to Plaintiff to challenge Freddie Mac's title to the Property requires a clear showing of fraud or procedural irregularity in the foreclosure process. *See, e.g.*, *Piotrowoski,* 302 Mich. at 197; *Overton*, 2009 WL 1507342 at *1; *Tatar*, 2011 WL 3706510 at *1. Plaintiff has failed to make such a showing and cannot mount an untimely

challenge to the foreclosure proceedings or the sale of the property, regardless of how she characterizes her claim. *See Dingman,* 2012 WL 884357, at *4–5 (rejecting plaintiffs' suggestion that defendants failure to engage in appropriate loan modification steps was sufficient indicia of "irregularity" to toll the redemption period or void the foreclosure sale). Therefore, Plaintiff's Counterclaims and Third-Party claims must fail.

Notwithstanding that Plaintiff's claims fail for the reasons above, the Court will nevertheless briefly address her claims on the merits.

**B. Hassell's Claims**

*1. Contract Claims*

In Counts I and IV of her Third-Party Complaint, Plaintiff attempts to characterize her claim to the property as one based in contract. She claims that the Trial Plan and the Partial Reinstatement Agreement are binding contracts; that the purported contracts required Wells Fargo to modify her mortgage loan once she complied with its terms; that she did comply with all its terms; and that Wells Fargo breached the contracts when it failed to modify her mortgage loan. The Court is not persuaded by Plaintiff's theory.

Neither the Trial Plan nor the Partial Reinstatement Agreement unconditionally promises Plaintiff that her loan would be modified and neither document is signed by Wells Fargo. The Michigan Court of Appeals recently rejected a similar argument in *Voydanoff v. Select Portfolio Serv., Inc.*, No. 298098, 2011 WL 6757841 (Mich. Ct. App. Dec. 22, 2011). In *Voydanoff*, the plaintiff filed suit against his loan servicer and others after he defaulted on his mortgage loan. *Id.* The lender foreclosed on the property in question, and it was later sold at a sheriff's sale. *Id.* The plaintiff claimed that the loan servicer reneged on a purported agreement to modify the plaintiff's mortgage loan. *Id.* The "Trial/Permanent Modification Agreement" that the plaintiff relied upon for this claim was described by the court as a "proposal." *Id.* at *6. The court observed that the plaintiff had signed the document but the loan servicer

9

had not. *Id.* The court rejected the plaintiff's breach of loan modification agreement claim and concluded that the "loan modification proposal did not ripen into a binding agreement, primarily because [it] bears only [the plaintiff's] signature, and therefore, does not objectively reflect a meeting of the minds regarding the essential modification terms." *Id.* at *7.

This case is analogous to *Voydanoff*. Here, Plaintiff similarly claims that the Trial Plan was a binding contract and that Wells Fargo breached the purported contract by failing to modify Plaintiff's mortgage loan. Yet, the language of the Trial Plan expressly provides that the Trial Plan is not a loan modification and Plaintiff's loan documents would not be modified "unless and until" Plaintiff met all the conditions for modification, including providing Wells Fargo all requested documentation. Moreover, when Plaintiff signed the Trial Plan, she acknowledged that it did not promise that her mortgage and note would be modified. Rather, it was merely an offer to do so if certain conditions were satisfied:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage[.]
>
> * * *
>
> If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income . . . to determine whether I qualify for *the offer described in this Plan* (the "Offer"). I understand that after I sign and return one copy of this Plan to the Lender, the Lender will review my modification package and send me written notice if I do not qualify for the Offer. *This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature.*

(emphasis added).

Similar to the plaintiff in *Voydanoff*, Plaintiff in this case cannot establish a claim that Wells Fargo breached an agreement to modify her mortgage loan. It is beyond dispute that Wells Fargo did not sign the Trial Plan. Thus, the loan modification proposal she signed "did not ripen into a binding agreement, primarily because [it] bears only [the Plaintiff]'s signature, and therefore, does not objectively

10

reflect a meeting of the minds regarding the essential modification terms." *Voydanoff,* 2011 WL 6757841 at *7.

### 2. *Claims Based on Oral Promises/Unsigned Documents*

Counts I and II of Plaintiff's Counterclaim and Counts II, III, and VI of her Third-Party Complaint are based on Plaintiff's claim that Defendants breached several oral promises to Plaintiff. Plaintiff alleges as follows: that Defendants promised that she would qualify for a modified loan if she complied with their requirements; that she submitted documents and made the required monthly payments; that she did so in reliance on Defendants' misrepresentations and false promise of a loan modification; that Defendants promised that the sheriff's sale would be adjourned until the loan modification process was completed; that Defendants refused to modify her mortgage loan; that Defendants proceeded with the sheriff's sale prior to completing the loan modification process; and that she suffered damages as a result. Michigan's Statute of Frauds, however, bars these claims.

The Statute of Frauds states as follows:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution *unless* the promise or commitment *is in writing and signed* with an authorized signature by the financial institution:
>
> > (a) *a promise* or commitment to lend money, grant or extend credit, or make *any other financial accommodation*;
> >
> > (b) *a promise* or commitment to renew, extend, *modify*, or permit a delay in repayment or *performance of a loan*, extension of credit, or other financial accommodation.
> >
> > (c) *a promise or commitment to waive a provision of a loan*, extension of credit, *or other financial accommodation.*

Mich. Comp. Laws § 566.132(2) (emphasis added). According to the unambiguous language of the statute, a party is precluded from bringing a claim against a financial institution to enforce the terms of an *oral promise* or *unsigned writing* that waives a loan provision. *See Crown Tech. Park v. D & N Bank, FSB*, 242 Mich. App. 538, 550 (2000). The Michigan Court of Appeals has previously determined that

11

"an agreement to delay a foreclosure sale is an agreement to make a 'financial accommodation' within the scope of [the statute]." *FEI Co. v. Republic Bank, S.E.*, No. 2005–00489, 2006 WL 2313612, at * 2 (Mich. Ct. App. Aug. 10, 2006) (citation omitted).

Plaintiff has failed to allege that any writing signed by Defendants exists to show that Defendants agreed to adjourn the sheriff's sale or provide Plaintiff a loan modification. Plaintiff only relies on oral promises. These alleged promises are unenforceable under the statute as they are promises "to waive a provision of the loan . . . or other financial accommodation" or "modify . . . performance of the loan." *See* Mich. Comp. Laws § 566.132(2). Such promises must be in writing and signed by Defendants. Thus, to the extent that Plaintiff's claims are based on alleged oral promises or assurances, these claims must fail.

### 3. Violation of the MCPA

Plaintiff appears to have withdrawn her MCPA claim by not addressing Freddie Mac's argument against it. Plaintiff also states in her response brief that she "respectfully requests this honorable Court grant Freddie Mac's motion as to [Plaintiff's] Invalid Foreclosure Procedure and MCPA [claims.]"

### 4. Intentional Infliction of Emotional Distress

In Count V of her Third-Party Complaint, Plaintiff admits that there was a contractual relationship between the parties by virtue of the "mortgage contract." Plaintiff has no basis to allege that Wells Fargo violated a duty that was distinct from its contractual obligations. Because there is no legal duty that is separate and distinct from the contractual obligation, Plaintiff's IIED claim must fail. *See Mills v. Equicredit Corp.*, 344 F. Supp. 2d 1071, 1080 (E.D. Mich. 2004).

### 5. Invalid Foreclosure by Publication

In Count VII of Plaintiff's Third-Party Complaint, she claims that Wells Fargo improperly foreclosed on the Property in violation of Mich. Comp. Laws § 600.3220. Section 600.3220 provides that a lender may adjourn a sale, week-to-week, by posting notice of the adjournment. Plaintiff alleges that

Wells Fargo failed to post notice of several weekly adjournments of the original foreclosure sale date of August 25, 2010.

Under Michigan law, notice of a mortgage foreclosure must be published in a newspaper for four successive weeks and "shall be posted in a conspicuous place upon any part of the premises described in the notice" within 15 days after the first publication of the notice. Mich. Comp. Laws § 600.3208. A party challenging the sufficiency of the posting has the burden of proof. *Cox v. Townsend*, 90 Mich. App. 12, 15 (1979). Personal or actual notice is not required. *Moss v. Keary*, 231 Mich. 295, 299 (1925). Any facially proper service requires a considerable showing of proof before it may be set aside, and bare denials of service are insufficient. *Prentice v. Bank of New York Trust Co., NA*, 2009 WL 1139332, *3 (Mich. App. 2009) (citing *Delph v. Smith*, 354 Mich. 12, 16-18 (1958)). A failure to observe the posting does not, by itself, contradict evidence that the notice was properly posted. *Grech v. American Home Mortgage Servicing*, 2010 WL 3767609, *1 (Mich. App. 2010).

In this case, Wells Fargo provided Plaintiff with facially proper service by publishing notice of foreclosure for four successive weeks (July 23, July 30, August 6, and August 13, 2010), and posting notice of the foreclosure sale on August 2, 2010, in accordance with § 600.3208. The sale was subsequently adjourned week-to-week as permitted under Michigan law. Plaintiff states that she had no notice of the foreclosure sale even though Wells Fargo complied with all of the requirements under § 600.3208. As such, Plaintiff has failed to satisfy her burden of proving a defect in the notice requirements under Michigan law.

*6. Quiet Title*

In Count III of her Counterclaim and Count VIII of her Third-Party Complaint, Plaintiff appears to seek a judgment quieting title to the Property. In quiet-title actions, the burden of proof is on the party seeking to establish clear title and that party must set forth a *prima facie* case that they have title to the disputed property. *Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet Cnty. Rd.*

*Comm'n*, 236 Mich. App. 546, 550 (1999) (citation omitted).  If the plaintiff establishes a *prima facie* case, the burden of proof shifts to the opposing party to establish superior right or title to the property.  *Id.* at 550 (citation omitted).

Plaintiff has not established a *prima facie* case of title because, as discussed above, Freddie Mac was the holder of both the Note and the Mortgage.  Plaintiff has not provided a reason for the Court as to why she has superior title, nor has she alleged any irregularity in the foreclosure process itself.  Therefore, this Count fails as a matter of law.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, it is HEREBY ORDERED that Wells Fargo's Motion to Dismiss [dkt 10] and Freddie Mac's Motion for Judgment on the Pleadings [dkt 17] are both GRANTED.

IT IS SO ORDERED.

Date:  March 6, 2013

                                                                  s/Lawrence P. Zatkoff
                                                                  LAWRENCE P. ZATKOFF
                                                                  U.S. DISTRICT JUDGE